We will hear argument next in Kakar v. USCIS 21-512. Thank you. You can proceed, Mr. Piston. Good morning, Your Honor. I, Mr. Piston, publicly complain of Muhammad al-Qaeda. The court below upheld the USCIS' decision denying Mr. Kakar's application for adjustment of status solely on the grounds that he was inadmissible to the United States under the so-called weapons law. However, the agency's finding on this point was unlawful for four separate reasons. It was arbitrary and capricious because it ignored three separate important aspects of the problem. It was arbitrary and capricious because it was not supported by substantial evidence on at least three material points. It was fired by police provision, and it was fired by issue strippers. Now, returning to the first point, this court held in Narogo v. Snow that the decision is arbitrary if it entirely fails to consider an important aspect of the problem. Here, the agency failed to consider three important aspects of the problem. First, it failed to consider whether Mr. Kakar's actions were contrary to Afghan or U.S. law. Second, even if his actions apparently contravene the law, it failed to consider whether they were nevertheless not unlawful because they were performed under duress. And finally, it entirely failed to consider Mr. Kakar's intent in using a firearm. Returning to the first point, the USCIS decision entirely failed to consider whether Mr. Kakar's actions were contrary to Afghan or U.S. law. This is simply not mentioned in the decision under review. This is a critical oversight because for anything to be considered terrorist activity, it must be unlawful under the laws of the place in which it occurred or under the laws of the United States. But there is absolutely no discussion in the USCIS's decision as to whether Mr. Kakar's actions were lawful under either Afghan or U.S. law, none whatsoever. The decision didn't even recognize that this was a requirement. So on this grounds alone, the decision is arbitrary. But it gets worse. Even if the agency had considered whether Mr. Kakar's actions were lawful under U.S. law, which is the only basis on which he could be considered unlawful since there's absolutely no evidence in the record at all as to what Afghan law is, it did not consider the fact that Mr. Kakar articulated in his response a notice of intent to deny his application for adjustment status a legal excuse, which is duress. Duress constitutes legal excuse for criminal conduct if the defendant shows that at the time of his conduct he was subject to actual or threatened force. The force or threat was of such a nature as to induce a well-founded fear of impending death or experience bodily harm, and there was no reasonable opportunity to escape from the force or threat except by engaging in the otherwise unlawful activity. Now, at a certain point, the USCIS issued Mr. Kakar a notice of intent to deny his application, in which they raised the fact that he was impressed with the service by the Taliban, and at that time he was forced to use a gun. And Mr. Kakar responded, the Taliban gave me a gun one day and told me to fight. I took the gun because they forced me to. If I had refused to take the gun, the Taliban would have killed me. Of course, killing someone is threatened force, or of a nature as to induce a well-founded fear of impending death or experience bodily harm. Mr. Kakar, being literally a prisoner of the Taliban, had no reasonable opportunity to escape from the force or threat other than by engaging in the unlawful activity. Now, the government responds by saying, well, you have finally had an alternative to shooting. You could have fled, which is an option you eventually did take. However, quite aside from the fact that this argument is barred by SEC versus generic, which, of course, requires the court to uphold the decision based on the grounds articulated by the agency, not the post-op rationalizations of counsel, it has no support in the record. What Mr. Kakar said one day was, one day, while everyone was praying in the mosque, I had an opportunity to run away, and I did. Obviously, not everyone was praying at the mosque throughout the time that Mr. Kakar was forced to fight the Taliban, and nothing in the record suggests that he had this opportunity to flee while he was praying and being forced to use a firearm. But in any event, the main thing is that the agency never even considered this option. This is another important aspect of the case. It simply did not consider it. Finally, the agency failed to consider Mr. Kakar's intent in using a firearm. This is, again, a critical oversight in that, as the agency itself said on page four of its decision, for an action to be considered a terrorist activity, it must be committed under circumstances indicating an intention to cause death or serious bodily injury. Now, it is true that this decision did at least mention that intent was a requirement, so at least they were aware of the law on this point. But merely mentioning the legal standard doesn't mean that one considers the issue. There is absolutely nothing in the agency's decision discussing Mr. Kakar's intent in using a firearm. Therefore, as much as the decision did not consider three important aspects of the problem, it should be held unlawful and set aside as arbitrary and capricious. But we've only just begun exploring the deficiencies of this decision. As the Court has ruled repeatedly, the denial of adjustment of status on the grounds that it happened to be a student incident is arbitrary and is not supported by substantial evidence. And again, even if the agency had decided that Mr. Kakar's actions were unlawful, or if they were not committed under duress, or if they were committed with the intention to cause a serious bodily injury or death, there's still no evidence in the record supporting any of these conclusions. Probably the best proof that there is no evidence in the record that any of Mr. Kakar's actions would be unlawful under Afghani or U.S. law is the fact that neither the district judge nor the government has ever been able to identify a single law in which Mr. Kakar's actions are plausibly violated. And now, of course, the Supreme Court has held repeated in SEC v. Generic Court and the numerous decisions following that the agency's actions must be upheld, if at all, on the basis articulated by the agency itself, and that the courts may not accept appellate counsel's post-hoc rationalization for the agency's issues. But even though it's improper of them to try, neither the judge nor the government's attorney were ever able in this proceeding below to identify a single law Mr. Kakar's actions supposedly violated. Now, it is true that in the brief before this court, the government did manage to suggest that maybe Mr. Kakar's actions violated several amendments of the Constitution. Maybe they violated the Establishment of Religion, maybe they violated the Free Exercise Clause, maybe they violated the New Process Clause. But, Your Honor, these clauses all apply to Congress or through the federal government or through the 14th Amendments of the state. Mr. Kakar is not in Congress. Mr. Kakar is not a federal government. Mr. Kakar is not a state government. Therefore, these amendments, the fact that they violated amendments of the Constitution, is simply not relevant here. And it's not evidence that they did actually violate any law. You have a collateral estoppel argument, I believe. Pardon me? You have a collateral estoppel argument? My problem is that that is so in New York. I'm not sure that that is so federally. And so, in one way, I'm more interested in whether res judicata applies because res judicata says you have to introduce issues that are relevant to the thing even though they were not actually there. So, my question is, does res judicata apply in this case? But really, the more interesting thing for me is, if it doesn't apply in this case because this is a different action, wouldn't it at least apply if the government then tried to take away asylum? Because that would be the same action and then res judicata would apply then, which doesn't directly apply here, but it just says what the government can and can't do in this case. Well, Your Honor, res judicata does apply here because this is the same action, because it arises out of the same events and the same facts. And that's how this Court, as we point out in our brief, that's how the Court defines res judicata or claims for reclusion. Did you not waive that argument about res judicata? We withdrew it, Your Honor. I'm sorry, what did you say? We did withdraw it below the Court, but we are entitled to expand what we did argue, issues for reclusion below, and we are entitled to expand upon that argument and these two arguments, claims for reclusion and issues for reclusion, and so if you're related, that we're entitled to raise that. Well, I mean, I don't know if you're entitled to. I suppose we can consider it if we wish to, but you didn't raise it below. Well, you raised it and then you affirmatively withdrew it. Yes, we did, Your Honor. But nevertheless, we are entitled, I do believe we're entitled to raise it on the field because it is interrelated to the issue of issues for reclusion. This is merely an elaboration, and the courts have held that the claims for reclusion and issues for reclusion are indiscriminately intertwined. Okay, thank you. So you've reserved a few minutes for rebuttal. We'll hear from the government. Thank you, Your Honor. Thank you very much. Good morning. Good morning. I'm Liza Solovey, Assistant United States Attorney for Eastern District of New York, representing defendants at LEAP, United States Citizenship and Immigration Services. Plaintiff seeks a review of USCIS's April 2016 decision that denied him adjustment of status from SILEAP to lawful permanent resident or LPR. What Plaintiff's presentation omits is that USCIS denied adjustment of status because he was inadmissible on two independent terrorism-related inadmissibility grounds. Plaintiff's comments today focus entirely on the weapons bar under 8 U.S.C. Section 1182, A.3.Z.3b. However, there is in addition an independent basis for inadmissibility, and yet it is disputed that adjustment of status cannot be granted unless the alien is in fact— Counsel. Counsel. Yes, Your Honor. That second issue was never argued. It was never argued before the court. If we believe that it would be futile to have the agency reconsider it, then we can affirm on it. But if we think that on that ground it is at least dubious, we can't act as if that ground is a valid ground. And there are serious issues for doubting the second ground, specifically the fact that the Patriot Act says it applies only with respect to aiding things in the future. Now, I know that when the Act was amended, when there was an Act passed saying that with respect to the Taliban it could act for things before, that doesn't tell me how broadly that is. Is it everything that anybody has done, or is it simply washing a dish before the Taliban was considered to be a terrorist organization? And does that before mean that even something as trivial as that could be acted retroactively in that way? I mean, how do you interpret that law? It would be extraordinary. I would even suggest to you that though we don't usually apply the Constitution in these constitutional problems, about saying that somebody who at a time was acting for something that was not a terrorist organization, washed a dish for them, could retroactively then be treated as being giving, aiding, and abetting. So, you know, at the very least, this is a question which I would think the agency would want to think about in a way that would be very serious given that it isn't before us. So to ask us to go on that ground sounds to me absurd, frankly. Thank you, Ron, for the question. I just want to make sure that I understand correctly, Your Honor, the material support bar was already below. The court did not need to reach it because... I think the question is, why in the world would you want us to rely in any way, shape, or form on the material support bar when it involves a number of significant and thorny retroactivity issues? I think you can. This is just Lohier. Hi. Thank you. When it involves a number of significant and thorny retroactivity issues, when we might rely on the weapons bar, which was decided here. So why don't you focus on that? Yes, Your Honor, if I may just really briefly address the retroactivity issue. I think there are four important points to consider, which was that the point that Congress was trying to get at was to capture pre-9-11 activity, that is to say, even though the Taliban... How do you know what Congress was trying to get at? They passed a law which says, before, in the broadest of terms, and I don't know what they meant. I'd like to have that argued very, very thoroughly before I have any idea. Understood, Your Honor. The other point to be made is that Section 691F of the CAA is not temporally limited. Congress could have done that. And the third and fourth points, just quickly, Your Honor, before I turn back to material support, is that Section 690B of the very same Act specifically excluded certain groups so that the CAA plainly contemplated exclusion to various terrorism-tiered groups and yet did not do so for the Taliban. All it did was set the Taliban as a tier-one group in an unlimited manner in the very same Act where they set up exclusions. And in the same Act, and this is the fourth point, Your Honor, Section 691A expanded the exemption of provision in the trigger on Section 1182D through BI to allow a greater degree of exemptions. And that's where any mitigation of this kind of conduct that Your Honor is referring to, that's where the appropriate placement of the honor was to fit. That was the – you have to look at the statute as a whole in order to get to that. But turning back to the weapons bar, Your Honor, the government would submit that Plaintiff is in error when Plaintiff says that there's insufficient ground to find that the intent and standard was met. The – page 163 of your record, for example, Your Honor, section 4, the Plaintiff was specifically asked whether – when he said he had used a Kalashnikov in services of the Taliban, whether he was using it in actual fighting, and he agreed. And he was asked, well, were you using it – who were you using it against, women, children, men? He said, I was using it against men. This is an actual military action he's talking about here, and it's reasonable to assume for the sake of argument that the serious bodily injury intent is a relevant intent. This is a military action with using machine guns. Serious bodily injury is certainly a standard that's met under any criteria. With regard to the hot points – I have a slightly different question. Suppose that we don't agree with you, that is, that we agree with Petitioner, Appellant, that the question was not decided, that there wasn't a sufficient discussion about whether that was. That is a thrust of their argument. Suppose we agree with that, and on that ground send it back to the BIA. At that point, is Petitioner free to raise the question of res judicata? That is, res judicata gets weighed at the district court, and they argue collateral estoppel, which is a far more complicated thing for them to do. But if it goes back, can they then argue res judicata? Because if res judicata actually applies, then in an odd way it may be futile to send it back for the opposite reason. And I just don't know whether res judicata could then be resurrected. To address Your Honor's question, just as a general principle in immigration proceedings, this Court has said in Chatterley v. H.S., which was case-cited in the elements brief on page 36, that res judicata only applies if it would be consistent with Congress's statutory scheme to apply res judicata, and should not be applied so as to frustrate clearly expressed congressional intent. And the government would submit that. That is entirely unhelpful as a formula. But go ahead. The government submits that what? The government submits that the repeated and unambiguous efforts of Congress to expand the trade grounds would militate against the finding that res judicata applies. Yeah, but that isn't answering my question. You see, you're telling me that though it might apply or not, that then it shouldn't apply because the government has this thing about when res judicata applies or not. And that's a question of law that we could decide. But my question was a narrower one. Can they raise it? And if they can raise it, then I'll decide for myself whether the argument you've just made was a good one or, as Judge Loge suggested, not a very one directly in point. But that's a different issue. Yes, Your Honor. And just to clarify a point that Your Honor made earlier, just for the sake of this discussion so it's clear, the BIA is not the one who would be making this decision. The IJ would not be the one who's making this decision. That would be the order. So this would be a USCIS decision in terms of adjustment. Remand would go back to the USCIS. And in the event that the USCIS, so it's two completely separate proceedings. That's fine. But you haven't answered my question. I may have been spoken too quickly as to where it goes back. But when it goes back, can petitioner resurrect a res judicata argument that this was something that ought to have been raised originally and wasn't? So we're not talking about collateral estoppel because it wasn't actually litigated, but we're acting res judicata. And I want to know whether in that return proceeding, something which they waived later can be resurrected. And if you don't know, you can tell me you don't know.  I don't know, Your Honor. I would assume the plaintiff can raise any concerns that he has. But I can't say for what purpose. No, okay. It's not a matter of history. Good. Thank you. I'm sorry. It was a far out question. And so I understand why you might have reacted that way. But that was my question. Okay. Any further? No. If there are no further questions, then the government presses on. Thank you very much. You have three minutes for rebuttal. Mr. Piston. Your Honor, the reason why the designation of the Taliban in 2006 as a terrorist organization is not retroactively accessible to the court is because the Patriot Act expressly prohibits the court from suddenly being found inadmissible on the basis of actions taken by a team of veterans to support a Tier 1 organization before it was designated as a Tier 1, before it was so designated. Now, the government is arguing that the 2006 law retroactively amended this Patriot Act. Mr. Piston, this is Judge Lohjian. You can use your time on rebuttal in any way you want. But I think you just heard a lack of interest in pursuing a very difficult question that was not decided by the – you know, below. So I might focus on the weapons bar issue. But you can do – you can do whatever you want. Regarding the issue of race judicata, the – well, I think the – regarding the issue of race judicata, I think the race judicata does apply, and it's – as we said before, we do not – we have the right to trace that, and it was remanded back to the agency. Basically, the agency could consider any argument that it wanted whatsoever. The – there would be no – since there's no ruling on the race judicata issue by this court, therefore, the agency would be free to consider it. But why is it that you withdrew the race judicata argument?  Why did you withdraw the argument? Because I read all the other cases, and all the other cases which are similar to this were being decided on collateral estoppel, so I got confused. Okay. Okay. Okay, that's fair. But the – I think – I believe the two issues are sufficiently interrelated that I can raise another one. Yeah. I believe that the cases decided in my brief established – But you're also saying that if we send it back for whatever other reason, you at that point could raise race judicata and say this issue should have been raised in the original proceeding, and even if it wasn't and therefore not litigated there, it is barred – the government is barred because it could have been raised. The way I understand the APA to work, Your Honor, is that once this – once this court vacates the USCIS's decision, there's no longer a final decision. Once there's no longer a final decision, the agency can consider any argument that it wants whatsoever. It's just like their – it's just like their deciding the case. Administratively, there's no sustained quality case. They would be – they would definitely consider this, Your Honor. Okay. Thank you. Thank you. Thank you very much. That concludes today's argument calendar.  Court is adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.